J-S04005-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
LUIS MIRANDA   :
  :
Appellant   :   No. 1614 EDA 2022

Appeal from the Judgment of Sentence Entered June 17, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000949-2021

BEFORE:   MURRAY, J., KING, J., and PELLEGRINI, J.*

MEMORANDUM BY MURRAY, J.:                          **FILED MARCH 29, 2023**

Luis Miranda (Appellant) appeals the judgment of sentence entered following his conviction at a bench trial of persons not to possess a firearm, carrying a firearm without a license, and carrying a firearm on a public street in Philadelphia.[1]  We affirm.

Appellant challenges the denial of his pre-trial suppression motion. Relevant to this appeal, the trial court summarized the evidence presented at the suppression hearing:

> The Commonwealth offered credible evidence of probable cause at the suppression hearing on March 22, 2022, through testimony from Police Officer Mouzon.  Mouzon is a 25[-]year veteran of the Philadelphia Police Department.  He has been involved in hundreds of narcotics investigations.  N.T. at 26.

---

\* Retired Senior Judge assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. §§ 6105, 6106, 6108.

  The Philadelphia Police Narcotics Field Unit to which Mouzon was assigned made five controlled buys of crack cocaine from a drug house at 2116 East Cambria Street, Philadelphia, in January and February 2020. *Id.* at 12-[1]5, 17-[1]8, 20. Mouzon and his fellow Narcotics Field Unit officers used a confidential informant (CI) to make the buys. *Id.* at 14, 16-[1]7, 19[.] They searched the CI before each controlled purchase, gave the CI pre-recorded buy money, watched the CI approach, enter, and leave the drug house, searched the CI upon his/her return, and recovered from the CI crack from the drug house. *Id.*

  Officer Mouzon served as "the eyes" on the buys. *Id.* at 26. On two of the five buys, Mouzon saw [Appellant] arrive at the drug house minutes after the CI knocked on the door. *Id.* at 15-[1]8. On both days, February 4th and 7th, the CI purchased two tubes of crack cocaine and left the house minutes after [Appellant] had appeared. *Id.*

  [Appellant] did not, at first, appear at the drug house during the … controlled buys on February 12th. *Id.* at 23-[2]4. The police executed a search warrant as soon as the CI emerged from the house that day after buying more crack. *Id.* [Appellant], however, appeared on the 2100 block of Cambria Street a few doors away from the drug house shortly after the search began. *Id.* at 24-[2]5, 38. The police noticed him in the street and arrested him. [Appellant] volunteered he had a firearm. *Id.* at 25. The police recovered a black .32 caliber Colt handgun with ivory grips from the front of his pants. *Id.*

Trial Court Opinion, 8/15/22, at 2-3.

  The Commonwealth charged Appellant with the firearms offenses and related charges. On July 21, 2021, Appellant filed a motion to suppress the firearm recovered by police, asserting:

  4. … [L]aw enforcement stopped, frisked and/or searched [Appellant] on the public streets and as a result recovered contraband which – on information and belief – the Commonwealth intends to offer against [Appellant] at trial.

- 2 -

5.  It is most respectfully submitted that law enforcement lacked reasonable suspicion/probable cause to stop, frisk, seize, search and or detain [Appellant].

Suppression Motion, 7/21/21, ¶¶ 4-5.  On March 22, 2022, following a hearing, the trial court denied Appellant's suppression motion.  N.T., 3/22/22, at 48-51.

A bench trial immediately followed, based on the suppression hearing record and several evidentiary stipulations.[2]  *Id.* at 56-59.  The trial court thereafter found Appellant guilty of all charges.  *Id.* at 59-60.  On June 17, 2022, the trial court sentenced Appellant to an aggregate 1½ - 3 years' incarceration, followed by two years of reporting probation.  Appellant timely filed a notice of appeal.  Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue:

Whether the lower court erred in denying [Appellant's] motion to suppress under Article I, Section 8 of the Pennsylvania Constitution and the Fourth and Fourteenth Amendments to the United States Constitution[,] where Philadelphia Police arrested and searched [Appellant] in the absence of probable cause to believe that he was or had been involved in criminal activity?

Appellant's Brief at 7.

Appellant argues he was arrested and searched based on "supposition and conjecture."  *Id.* at 14.  Appellant argues the evidence established only

---

[2] The parties stipulated that the firearm was tested and found to be operable. *Id.* at 55.  The parties additionally stipulated to Appellant's status as a person not to possess firearms under 18 Pa.C.S.A. § 6105.

his mere presence at the house; "there was nothing to connect [him] to the drug sales or illegal activity aside from his presence at the property." *Id.* at 15.

Appellant argues law enforcement "did not have the requisite probable cause to believe that [he] was committing (or had committed) a crime." *Id.* at 14. Appellant asserts:

> From the testimony adduced during the suppression hearing, [Appellant] arrived at and was admitted to a house where a confidential informant purchased narcotics on two separate days. No evidence was offered to explain why [Appellant] was at the house and what if anything [he] did while inside….

*Id.* at 14-15. Appellant claims the only witness "did not testify he was able to see what occurred inside of the house, and did not know what conversations the CI had while inside of the house." *Id.* at 15. Appellant maintains there was no probable cause he was involved in illegal activity. *Id.* He argues, "To conclude that he was involved in the drug transactions at issue was pure speculation on the part of the suppression court." *Id.*

Our review of the denial of a suppression motion

> is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record; our standard of review on questions of law is *de novo*. Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial.

*Commonwealth v. Singleton*, 169 A.3d 79, 82 (Pa. Super. 2017) (citations omitted).

The Fourth Amendment of the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution, prohibit unreasonable searches and seizures. *Int. of T.W.*, 261 A.3d 409, 416 (Pa. 2021). The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Similarly, Article I, Section 8 of the Pennsylvania Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizure, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

PA. Const. art. I, § 8.

> Our Supreme Court explained:

> "Probable cause" is a practical, non-technical concept. *Commonwealth v. Coleman*, 574 Pa. 261, 830 A.2d 554, 560 (Pa. 2003). To establish probable cause, the Commonwealth must demonstrate that a search meets the requirements of the totality-of-the-circumstances" test. *Commonwealth v. Jones*, 605 Pa. 188, 988 A.2d 649, 655-56 (Pa. 2010)….

*Commonwealth v. Barr*, 266 A.3d 25, 40 (Pa. 2021).

> "[P]olice have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed." **Commonwealth v. Hernandez**, 594 Pa. 319, 935 A.2d 1275, 1284 (Pa. 2007) (quoting **Commonwealth v. Rogers**, 578 Pa. 127, 849 A.2d 1185, 1192 (Pa. 2004)). Whether police had probable cause to conduct a warrantless search also is evaluated under a traditional totality-of-the-circumstances test. **Id.**

**Id.** This Court further expounded:

> Probable cause does not involve certainties, but rather the factual and practical considerations of everyday life on which reasonable and prudent men act. It is only the probability and not a *prima facie* showing of criminal activity that is a standard of probable cause. To this point on the quanta of evidence necessary to establish probable cause, … finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision.

**Commonwealth v. Dommel**, 885 A.2d 998, 1002 (Pa. Super. 2005) (internal citations, quotation marks, and brackets omitted).

Mere presence at the scene of a crime is not sufficient to establish probable cause for an arrest. **Commonwealth v. Wilson**, 631 A.2d 1356, 1359 (Pa. Super. 1993); **Commonwealth v. Reece**, 263 A.2d 463, 466 (Pa. 1970). However,

> [w]hen executing a warrant to search a residence, the police have authority to detain individuals who happen to be present. However, in order to search or arrest them, the police must establish independent probable cause.

**Commonwealth v. Wilson**, 631 A.2d 1356, 1359 (Pa. Super. 1993).

Viewed in a light most favorable to the Commonwealth, the evidence in established more than Appellant's "mere presence" at the scene. *See Wilson*, 361 A.2d at 1359. As the trial court explained:

Here, police had probable cause to arrest and search [Appellant]. The totality of the circumstances indicated a probability that [Appellant] had illegally distributed drugs. Over five days of investigation, police saw [Appellant] at 2116 Cambria Street — a known drug house — three times. N.T.[, 3/22/22,] at 16-20. On two of those days, [Appellant] arrived at the drug house minutes after a confidential informant knocked on the door to buy drugs. *Id.* at 16-8. The CI left with crack cocaine a few minutes after [Appellant] arrived. *Id.* [Appellant's] arrival within minutes of the informant, and the informant's departure with crack cocaine a few minutes later, support a reasonable inference that [Appellant] supplied — or at least controlled — the crack cocaine. [Appellant] appeared at the drug house for a third time while the police were executing a search warrant immediately following the last controlled buy. The police saw [Appellant] standing in the street outside the house as the police processed evidence. [Appellant's] appearance immediately after the final drug purchase while the police executed a search warrant supports an inference that he controlled the drugs.

The police had ample probable cause to arrest [Appellant]. The recovery of the firearm from his person incident to his arrest did not violate either the federal or state constitution.

Trial Court Opinion, 8/15/22, at 4. Discerning no error or abuse of discretion, we adopt the trial court's well-reasoned analysis and conclusion.[3] *See id.* Appellant's claim merits no relief. *See Singleton*, 169 A.3d at 82.

_____

[3] As the trial court observed to Appellant at the suppression hearing:

I find that it's either you're the unluckiest person in the world to just show up at a drug house at precisely the wrong time twice, or there is something there. And I think that your arrival at the

*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2023

---

drug house so shortly after the [CI] arrived twice is more than coincidence, and it supports a reasonable inference by the police officer that you were engaged in a drug trafficking conspiracy with [co-defendant]….

N.T., 3/22/22, at 49-50.